Mona Houck
David S. Korzenik
MILLER KORZENIK SOMMERS RAYMAN LLP
1501 Broadway, Suite 2015
New York, NY 10036
(212) 752-9200
mhouck@mkslex.com
dkorzenik@mkslex.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KIM KRANS,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>THOMPSON LITERARY AGENCY LLC,<br><br>　　　　Defendant. | NO: 1:23-cv-03696-ER |

**DEFENDANT'S ANSWER TO COMPLAINT**
**AND COUNTERCLAIM**

　　　　Defendant Thompson Literary Agency LLC ("TLA"), states for its Answer to the

Complaint filed by Plaintiff Kim Krans as follows:

**INTRODUCTION**

　　　　1.　　　　Defendant denies the allegations and characterizations of the case contained in

Paragraph 1.

　　　　2.　　　　Defendant admits that TLA is a well-known agency, that it is owned by Meg

Thompson, and that the works represented by TLA identified in Paragraph 1 are "consistently

selling works." Defendant denies the remaining allegations and characterizations of the case contained in Paragraph 2.

## PARTIES

3. Defendant admits only so much of Paragraph 3 as alleges that Kim Krans resides in California and was a self-published author in 2011 and 2012, prior to her representation by TLA. Defendant denies the remaining allegations of Paragraph 3.

4. Defendant admits the allegations of Paragraph 4.

## JURISDICTION

5. Defendant admits only so much of Paragraph 5 as alleges that this Court has subject matter jurisdiction based on diversity of citizenship. Defendant denies the remaining allegations of Paragraph 5 to the extent that they purport to assert independent subject matter jurisdiction based on the Declaratory Judgment Act.

6. Defendant admits the allegations of Paragraph 6.

7. Defendant admits the allegations of Paragraph 7.

## FACTUAL ALLEGATIONS

8. Defendant admits only so much of Paragraph 8 as alleges that Meg Thompson saw one of Ms. Krans' books and reached out via Ms. Krans' website. Defendant denies the remaining allegations of Paragraph 8.

9. Defendant admits only so much of Paragraph 9 as alleges that TLA and Ms. Krans entered into an agreement in 2015, but denies the implication that this was the first agreement between TLA and Ms. Krans and denies the implication that the agency relationship was ever intended to be limited to children's books. Defendant lacks knowledge or information sufficient to form a belief about the truth of Ms. Krans' alleged motivation for seeking representation from TLA. Defendant denies the remaining allegations of Paragraph 9.

10. Defendant admits only as much of Paragraph 10 as alleges that a Harper One editor contacted Ms. Krans. Defendant denies the remaining allegations of Paragraph 10.

11. Defendant admits only as much of Paragraph 11 as alleges that TLA was the agent for Ms. Krans in an agreement with Harper One. Defendant denies the remaining allegations of Paragraph 11.

12. Defendant admits only as much of Paragraph 12 as alleges that Ms. Thompson did not directly introduce Harper One to Ms. Krans. Defendant denies the remaining allegations of Paragraph 12.

13. Defendant admits only as much of Paragraph 13 as alleges that Ms. Thompson through TLA performed agency services on Ms. Krans' behalf, helped promote book and product launches, attended launch events, was in regular communication with Ms. Krans about various represented projects, met regularly with Ms. Krans to discuss future opportunities, and was fully engaged as Ms. Krans' agent. Defendant denies the remaining allegations of Paragraph 13.

14. Defendant admits only as much of Paragraph 14 as alleges that Ms. Thompson and TLA acted as Ms. Krans' agent and earned 15 percent commission. Defendant denies the remaining allegations of Paragraph 14.

15. Defendant admits only as much of Paragraph 15 as alleges that TLA and Ms. Krans initially executed separate agency agreements for each represented work. Defendant denies the remaining allegations of Paragraph 15.

16. Defendant admits only as much of Paragraph 16 as alleges that TLA and Ms. Krans entered into an agency agreement in August 2020 that included TLA's representation of *The Wild Unknown Tarot*, which had initially been self-published. Defendant denies that the August 2020 agreement applies to only one work and denies the characterization of the relationship with the publisher being based solely on Ms. Krans' introduction.

17. Defendant admits only as much of Paragraph 17 as alleges that TLA was and would be due a commission for services rendered. Defendant denies the remaining allegations of Paragraph 17.

18. Defendant admits only as much of Paragraph 18 as alleges that Ms. Krans and

TLA have both benefited financially from their agency agreement. Defendant denies the remaining allegations of Paragraph 18.

19. Defendant denies the allegations of Paragraph 19.

20. Defendant denies the allegations of Paragraph 20.

21. Defendant admits only so much of Paragraph 21 as alleges that neither TLA nor Ms. Thompson personally informed Ms. Krans of the publication date of *The Animal Spirit Pocket Deck and Guidebook*. Defendant denies the remaining allegations of Paragraph 21, including the allegation that Ms. Krans—who was informed directly by the publisher of this date more than a year in advance and approved every stage of development—was unaware of the publication of this ancillary product.

22. Defendant admits only as much of Paragraph 22 as alleges that TLA advised Ms. Krans of its social media and website policy. Defendant denies the remaining allegations of Paragraph 22.

23. Defendant admits only as much of Paragraph 23 as alleges that Ms. Krans officially terminated the agency relationship with Ms. Thompson and TLA on December 12, 2022. Defendant denies the remaining allegations of Paragraph 23.

24. Defendant admits only as much of Paragraph 24 as alleges that Ms. Thompson and TLA have worked with other creators of tarot and oracle decks. Defendant denies the remaining allegations of Paragraph 24.

25. Defendant admits only as much of Paragraph 25 as alleges that specific products were published. Defendant denies the remaining allegations of Paragraph 25.

26. Defendant denies the allegations of Paragraph 26.

27. Defendant admits only as much of Paragraph 27 as alleges that TLA is entitled to continue to receive its full 15 percent commission on works subject to the agency agreement. Defendant denies the remaining allegations of Paragraph 27.

28. Defendant denies the allegations of Paragraph 28 and respectfully refers the

Court to the actual language of the Agreement, attached as Exhibit 1.

29. Defendant denies the allegations of Paragraph 29 and respectfully refers the Court to the actual language of the Agreement, attached as Exhibit 1.

30. Defendant admits that TLA did not initially introduce Harper One to Ms. Krans but denies any relevance to the Agreement or the asserted claims.

31. Defendant denies the allegations of Paragraph 31, in particular the allegation that misrepresents communication from TLA as referring to a request for "standard author support and professional communication" when no such language appears in the email and the communication plainly referred in general to the overreaching of Ms. Krans' termination letter, which did not conform to the terms of the agency agreement.

32. Defendant admits only as much of Paragraph 32 as alleges that it is entitled to irrevocable commission under the parties' agreement. Defendant denies the remaining allegations of Paragraph 32.

33. Defendant admits that TLA earned commission in 2021, 2022, and 2023 from its representation of Ms. Krans' work. Defendant admits it earned the amount alleged in Paragraph 33 for 2021. Defendant denies the accuracy of the amounts alleged as earned in 2022 and projected in 2023.

34. Paragraph 34 is speculation and characterization to which no response is required. To the extent a response is deemed required, Defendant denies the allegations of Paragraph 34 except to admit that it is entitled to irrevocable commission under the parties' agreement.

35. Defendant denies the allegations of Paragraph 35.

36. Defendant denies the allegations of Paragraph 36.

37. Defendant denies the allegations of Paragraph 37.

38. Paragraph 38 states a prayer for relief that requires no answer of Defendant, but to the extent that such allegations require an answer, they are denied.

39. Defendant denies the allegations of Paragraph 39.

## COUNT ONE
## Declaratory Judgment

40. Defendant repeats and realleges the responses above as if fully stated here.

41. Defendant denies the allegations of Paragraph 41.

42. Defendant denies that there is any genuine dispute as to TLA's entitlement to commission under the Agreement as alleged in Paragraph 42.

43. Defendant admits the allegations of Paragraph 43.

44. Defendant admits the allegations of Paragraph 44.

45. Defendant denies the allegations of Paragraph 45.

46. Defendant denies the allegations of Paragraph 46.

47. Defendant denies the allegations of Paragraph 47.

48. Defendant denies that TLA threatened to bring claims against Ms. Krans but admits that counsel responded to Plaintiff's threats by citing and explaining the applicable law, noting Defendant's adherence to the terms of the contract, and concluding that any effort to avoid or interfere with the commissions due to TLA would be a breach of contract.

49. Defendant denies the allegations of Paragraph 49.

## COUNT TWO
## Breach of Contract

50. Defendant repeats and realleges the responses above as if fully stated here.

51. Defendant admits the allegations of Paragraph 51.

52. Defendant admits the allegations of Paragraph 52.

53. Defendant admits that the language quoted in Paragraph 53 is included in the Agreement.

54. Defendant admits only as much of Paragraph 54 as alleges that Ms. Krans has to date paid the required commission under the Agreement. Defendant denies the remaining allegations of Paragraph 54.

55. Defendant denies the allegations of Paragraph 55.

56. Defendant denies the allegations of Paragraph 56.

57. Defendant denies the allegations of Paragraph 57.

58. Defendant denies the allegations of Paragraph 58.

59. Defendant denies the allegations of Paragraph 59.

60. Defendant admits only as much of Paragraph 60 as alleges that prior to termination, Plaintiff complied with her obligation under the Agreement to pay Defendant's commissions as the Agreement requires. Defendant denies the remaining allegations of Paragraph 60.

61. Defendant admits that the language quoted in Paragraph 61 is included in the parties' agreement.

62. Defendant denies the allegations of Paragraph 62.

63. Defendant denies the allegations of Paragraph 63.

64. Defendant denies the allegations of Paragraph 64.

65. Defendant denies the allegations of Paragraph 65.

66. Defendant denies the allegations of Paragraph 66.

## COUNT THREE
### Breach of Fiduciary Duty

67. Defendant repeats and realleges the responses above as if fully stated here.

68. Defendant admits the allegations of Paragraph 68.

69. Defendant admits the allegations of Paragraph 69.

70. Defendant admits the allegations of Paragraph 70.

71. Defendant is without the knowledge of Plaintiff's mental state required to admit or deny the allegations of Paragraph 71.

72. Defendant denies the allegations of Paragraph 72.

73. Defendant admits only as much of Paragraph 73 as alleges that Defendant

represented other clients who created tarot and oracle decks. Defendant denies the remaining allegations of Paragraph 73.

74. Defendant denies the allegations of Paragraph 74.

75. Defendant denies the allegations of Paragraph 75.

**AFFIRMATIVE DEFENSES**

As further, separate, and affirmative defenses, without assuming the burden of proof of any such defense that rests with Plaintiff, Defendant states as follows:

**FIRST AFFIRMATIVE DEFENSE**
**Failure to State a Claim**

The Complaint fails to state a claim upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**
**Estoppel**

Plaintiff is estopped from enforcing any of the alleged rights, claims, and obligations it seeks to enforce against TLA.

**THIRD AFFIRMATIVE DEFENSE**
**Lack of Damages**

Plaintiff has not suffered any damages as a result of any actions taken by TLA, and Plaintiff is barred from asserting any cause of action against TLA.

**COUNTERCLAIM**

Defendant Thompson Literary Agency LLC, by its attorneys, asserts the following claim against Plaintiff Kim Krans:

**PARTIES**

76. Counterclaim Plaintiff Thompson Literary Agency LLC is a New York corporation with its principal place of business at 48 Great Jones St., Suite 5F, New York, N.Y.

77. Counterclaim Defendant Kim Krans is an individual residing in California.

## JURISDICTION AND VENUE

78. This court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

79. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because TLA has its principal place of business in New York City.

## FACTS

80. This is a straightforward case of an author who has profited immensely from her agent's talent and skill over many years and is now lobbing baseless claims and imposing needless litigation costs in an attempt to avoid her obligations and force the agent to give up commissions she is entitled to under a valid agency agreement and New York law.

81. TLA and its owner and founder Meg Thompson represented Kim Krans as her literary agent from 2014 to 2023.

82. TLA had a valid contract with Ms. Krans that provided—as is standard in agency agreements—that TLA would continue to receive its commission if the agreement was terminated.

83. Ms. Krans terminated the agreement, which she is fully entitled to do.

84. Ms. Krans then insisted that she should not be required to follow the post-termination provisions, including full payment of TLA's commission. As the Agreement and New York law make clear, Ms. Krans is indeed required to follow the post-termination provisions.

85. Ms. Thompson, who is well respected in the publishing industry and has a reputation as one of the most diligent agents in the business, first became aware of Ms. Krans when she saw her self-published children's book in a store in Brooklyn. Ms. Thompson sent a note to an email address on Ms. Krans' website stating that she admired the book. Ms. Krans' husband initially responded. Ms. Krans—unprompted and of her own volition—then reached out

9

to Ms. Thompson in September 2014 to discuss potential book projects including two children's books, an adult memoir, and general future work.

86. That same month, TLA and Ms. Krans entered into an agency agreement focused on the two children's books with the intent to also seek a publisher for the memoir and self-published tarot decks. In the winter of 2014, Ms. Thompson swiftly parlayed Ms. Krans' two children's books into a three-book deal with Random House Children's, with a $100,000 advance. Ms. Krans was incredibly pleased, and in May 2015, TLA and Ms. Krans entered into another agency agreement focused on *The Wild Unknown Tarot Deck and Guidebook*.

87. Although TLA and Ms. Krans initially entered into separate agreements based on specific projects, the general scope of the representation was understood by both parties from the outset to cover any deals with book publishers. In March 2015, for example, when an editor at Harper Collins reached out to Ms. Krans regarding her self-published tarot deck, Ms. Krans made no effort to further explore or negotiate any deal herself but instead immediately directed the editor to Ms. Thompson, stating that "[f]or book deals with publishers I am represented by Meg Thompson at Thompson Literary Agency—I've cc'd her here so the two of you can be in touch."

88. Over the course of TLA's representation, the agency successfully sold 14 works on Ms. Krans' behalf to the largest and most successful publishers, generating millions of dollars in revenue for Ms. Krans. As an example of the extent of TLA's success for Ms. Krans, the publisher of Harper One, who first published Ms. Krans' *The Wild Unknown Tarot*, stated in an email to Ms. Thompson: "I just wanted to take a minute now to thank you again. It's wonderful to work with you!  You so gracefully and graciously facilitated such authentic and productive communication between all of us." The same publisher says in another email: "Thank YOU so much for your stalwart support of both Kim and us. You definitely set the standard of how to be in this complex relationship business. You are true grace and I am honored to work with you, Meg."

89. After several years of representation, TLA and Ms. Krans entered into a new agency agreement in August 2020 (the "Agreement"), which was negotiated and drafted on Ms. Krans' behalf by her attorney Jeffrey Kass and which covered all of Ms. Krans' work. (See Exhibit 1.)

90. That Agreement is a standard agency agreement that, among other things:

   a. Identifies as represented works eight completed and published works and six works being negotiated at the time of the Agreement.

   b. Grants to TLA, as an agency coupled with an interest, an irrevocable 15 percent commission on any funds due to the author related to any works covered by the agreement, regardless of how the project was initiated—whether such deals "arise from an agreement initiated or negotiated by Agency or anyone else, including Author."

   c. Provides that TLA's commission is fully earned and due upon receipt of any funds due to the Author as a result of any and all agreements with any third party relating to the works covered by the Agreement.

   d. Specifies that upon termination, "TLA shall continue to be irrevocably entitled to receive directly from the applicable third party its commissions in the percentages referred to above"—not only for the works specifically identified in the Agreement but also for "all dispositions of Rights in and to any Work which is the subject of a publishing or similar agreement entered into during the term of this agreement or within six (6) months thereafter with a publisher or other third party to whom TLA submitted the Work during the term of this agreement."

   e. Provides that TLA is "entitled to"—but not required to—complete negotiations with any publisher considering Ms. Krans' work as of the termination date.

   f. Includes no post-termination duties or responsibilities for TLA other than

continuing to collect and pass on Ms. Krans' share of royalties along with royalty statements.

g. Places no limitations whatsoever on TLA or Ms. Thompson's representation of authors producing similar work.

91. TLA has fully complied with the Agreement and performed its own obligations under the Agreement.

92. Throughout TLA's representation of Ms. Krans, including the term of the 2020 Agreement, TLA fully performed its agency duties.

93. In fact, TLA went above and beyond its obligations as an agent, repeatedly resolving conflicts and smoothing over relationships Ms. Krans damaged. In one such instance, TLA was able to negotiate a deal that allowed Ms. Krans to keep a $200,000 advance for a book she refused to write even though she was under contract to deliver it. Another time, Ms. Thompson convinced a publisher to pay half of an advance for a journal Ms. Krans refused to produce and paid the other half herself to placate Ms. Krans.

94. TLA's and Ms. Thompson's services routinely extended well beyond negotiating any deal. TLA and Ms. Krans were in frequent and consistent communication, via phone, email, and text and voice messages handling details of ongoing projects and strategizing about new ones. For example, in 2022—the last year of TLA's representation—TLA participated in a large kickoff call for Ms. Krans' new tarot deck, discussed publicity issues with Ms. Krans and her business advisor, was heavily involved in interfacing with a publisher to improve communication, spent many hours negotiating a resolution when Ms. Krans demanded to be paid for a product she refused to produce, had multiple long strategy calls about new pitches, was extensively involved in launches of new books and products, successfully shepherded two board books through publication with a major publisher, and performed countless other tasks— many of which were the kinds of work that would typically be taken on by a publicist or that otherwise went beyond the scope of an agent's duties. Texts and emails with Ms. Krans and with

publishers and others on her behalf number in the many hundreds for 2022 alone.

95. The 2020 Agreement was in place until Ms. Krans suddenly announced on a November 17, 2022 video call with Ms. Thompson that she was terminating the agency relationship with TLA.

96. Before this November 17 video call, Ms. Krans had frequently praised TLA's successful efforts on her behalf. In just one of many examples, earlier in 2022, Ms. Krans posted to her thousands of followers on Instagram: "I LOVE MY AGENT SHE IS A FUTURE-SEER." In another example, referring to a dispute with a publisher TLA helped Ms. Krans navigate, Ms. Krans wrote in 2020 to Ms. Thompson: "I was reminded of so many instances in which u have spent excessive time trying to get them to do right. … Just want to say I see that, and I THANK YOU for your long-standing effort and support."

97. Ms. Krans' business advisor, Billy Goldberg, also praised TLA's representation, calling Ms. Thompson's skillful contract negotiations and the high advances obtained for Ms. Krans' work some of the best he had seen in the agenting business.

98. On December 12, 2022, Mr. Kass sent a letter affirming the termination Ms. Krans had initiated on November 17.

99. According to the terms of the Agreement, the termination was fully effective on January 11, 2023, 30 days from Mr. Kass' written notice.

100. The Agreement makes clear that TLA's 15 percent commission is irrevocable and continues after termination of the Agreement with no further obligations other than collecting payments and disbursing Ms. Krans' share along with a royalty statement.

101. TLA has at all times—before and after termination—promptly and regularly provided Ms. Krans with her share of royalties, and Ms. Krans has lost no income under any publishing agreement related to her representation by TLA.

102. Ms. Krans continues to receive substantial and regular royalties from the works represented by TLA under the Agreement.

103.    The post-termination provisions guarantee commission not only on deals entered into during the term of the Agreement but also on any deal entered into within six months of termination if TLA submitted the work to a publisher or similar entity for consideration during the term of the Agreement. Therefore under the Agreement, this commission is fully earned even if TLA does nothing more than submit a work.

104.    Ms. Krans initially acknowledged her ongoing responsibility to pay TLA's commission, noting through her counsel in the termination letter: "As everyone knows, there are multiple existing streams of income. The expectation is that TLA will still collect revenue on these, take its commission and pay Kim what she is owed."

105.    Despite the Agreement's clear post-termination provisions guaranteeing that TLA's 15 percent commission continues in perpetuity and the termination letter's acknowledgment of this guarantee, Ms. Krans attempted to avoid her obligations under the Agreement by pressuring TLA to agree to reduced commission to avoid litigation.

106.    When TLA declined to forgo its rights under the Agreement, Ms. Krans brought this action, which misrepresents the Agreement, avoids reference to the complete terms of the Agreement, and seeks to use the cost of litigation to force accommodations that are unjustified and unsupported by facts or law.

## COUNT ONE
## Declaratory Judgment

107.    TLA repeats and realleges the allegations set forth above as if fully stated here.

108.    TLA seeks a declaratory judgment to resolve a dispute concerning the respective rights, obligations, and duties of TLA and Ms. Krans under the Agreement with respect to TLA's irrevocable right to commission, as well as other applicable provisions.

109.    An actual case or justiciable controversy exists concerning TLA's entitlement to commission because Ms. Krans has asserted that the plain language of the Agreement is not applicable or that she should not be required to further perform her obligation to pay TLA's

commission under the Agreement and that TLA is required to perform duties beyond what the Agreement states to continue to receive the commission it is entitled to in accordance with the law.

110. The amount of the commission to which TLA is entitled on proceeds resulting from works covered by the Agreement exceeds $75,000.

111. This Court's issuance of declaratory relief will terminate some or all of the existing controversy between the parties and will provide certainty to the parties with respect to their rights and obligations under the Agreement.

112. TLA is accordingly entitled to a declaratory judgment establishing the rights and obligations of the parties and determining the extent of its entitlement to commission on any proceeds resulting from works covered by the Agreement.

113. Defendant therefore requests a declaration by this Court that:

   a. the Agreement's post-termination provisions must be enforced and that, accordingly, TLA is entitled to continue to receive the 15 percent commission on works covered by the Agreement in accordance with the terms of the Agreement and New York law; and that

   b. these commissions are fully earned according to the terms of the Agreement and are not dependent on any further actions on the part of TLA.

WHEREFORE, Defendant Thompson Literary Agency requests that the Court enter judgment in its favor and against Plaintiff Kim Krans as follows:

(1) By declaring that Defendant is entitled to commission for all covered works in accordance with the Agreement;

(2) By declaring that Defendant is not required to perform additional acts to receive this commission;

(3) By awarding Defendant costs and legal fees;

(4) By awarding such other and further relief as this Court deems proper and just.

## DEMAND FOR JURY TRIAL

In accordance with F.R.C.P. 38(b), Defendant demands a trial by jury on all issues so triable.

Dated:  New York, New York  
       July 5, 2023

Respectfully submitted,

MILLER KORZENIK SOMMERS RAYMAN LLP

By: /s/ Mona Houck  
Mona Houck  
David S. Korzenik

1501 Broadway, Suite 2015  
New York, NY 10036  
mhouck@mkslex.com  
dkorzenik@mkslex.com  
(212) 752-9200

*Attorneys for Defendant*