

1626 Wazee Street, Suite 200
Denver, CO 80202
Telephone: 303-723-8400
Facsimile: 844-670-6009
http://www.dickinsonwright.com

Jeffrey H. Kass
JKass@dickinsonwright.com
303-723-8403

November 13, 2023

*VIA ECF*

Hon. Edgardo Ramos         *Kim Krans v. Thompson Literary Agency* 1:23-cv-03696-ER
U.S. District Court, SDNY
Thurgood Marshall United States Courthouse
40 Foley Square New York, NY 10007

Dear Judge Ramos:

I write on behalf of Plaintiff Kim Krans in response to Defendant's letter of November 6.

### Background

This case is about a literary agent (defendant) who not only didn't do her job, but then intentionally went out of her way to help direct competitors despite promises to the contrary.

Plaintiff Kim Krans is a leading author of Tarot Card decks and books on spirituality. She hired Defendant as her agent after Defendant solicited her business. Kim and Defendant operated pursuant to written agreements, the last one of which is at issue in this case. Things were going well between Kim and Defendant's owner Meg Thompson. Both were making good money. But when Defendant began adding numerous new clients per year, including more and more direct competitors of Kim, Meg stopped rendering services to Kim.

The following are a list of some of things Defendant used to do for Kim but then stopped once Meg got too busy. The bold is what Defendant used to do; the colored what went wrong.

- **Held regular meetings with author about new projects/pitches, in person and online**
    - Was unavailable and uninterested in pitching three major projects Krans produced in 2022 unlike before.
- **Pitched Krans' new projects to publishers in a timely manner and**
    - Failed to pitch projects to publishers unlike previous projects.
- **Responded promptly and directly to emails, texts, phone calls**
    - Refused and failed to respond to text, emails, or phone calls.
- **Attended virtual marketing meetings for product launches.**
    - Rarely participated during meetings/Kim often wondered if she was even on zoom since here camera was never on anymore.

- **Engaged with publishers, PR team, and editors for author ensuring successful launch and adherence to contractual agreements**
    o Refused and failed to be on any marketing, editorial, or promotional meetings concerning the release of a brand new product Defendant is the agent for.
- **Attended launch and promotional events of author both in person and online**
    o Failed to support promotion of author's products in any way.
- **Engaged and shared all promotional materials on social media platforms related to announcements of product launches**
    o Failed to share or promote any of author's announcements on social platforms. Then blocked author on social channels and deleted posts, comments, and tags related to author

All of that would have been enough to cause Kim to end her relationship with Defendant, but Meg didn't just stop servicing Kim. She also was landing client after client that directly competed with Kim's works. After the global success of Kim's books, rather than continuing to support her bestselling author, Kim, Defendant instead helped create a total of nine Tarot decks and other works that appeared on retailer shelves and online directly alongside Krans' works as competitive products despite Meg promising Kim she wouldn't take on more.

Not only did Defendant pitch and then sell these competitive works using Kim's work product, but Defendant did so by using Krans' unique packaging as a design template for competitive works. This packaging prototype was developed exclusively by Krans and her designer working over a year. Defendant stole it and instructed her other clients to use it. Here is a glaring example of the copying Defendant engaged in with a competitive product, as shown side by side with Kim's.




Ultimately, based on the lack of service, direct support of numerous competitors and theft of designs, Kim terminated relationship with Defendant.

## Analysis

Kim sued Defendant for breach of contract and breach of fiduciary duty. Defendant's letter failed to highlight that the contract here states that Defendant earns a commission not just

for being the agent of record but "***for services rendered***." The "services rendered" part of the contract here can't just be ignored.

Case law in the context of literary agents still relies on express language of the agreement even it when it comes to post-agreement commissions, applying the general principle that: "post-discharge commissions [are paid] only if the parties' agreement expressly provided for such compensation" (*Swits v. New York Sys. Exch.,* 281 A.D.2d 833, 835, 722 N.Y.S.2d 300 (2001). This was the same result in the literary agent case of *Peter Lampack Agency, Inc. v. Grimes*, 93 A.D.3d 430, 939 N.Y.S.2d 409, 2012 N.Y. Slip Op. 01576 (2012), where the court honed in on the precise contract language to determine what post-agreement commissions the agent was or was not entitled to. The *Friedman* case does not posit that contract language no longer matters. ***Here, the contract ties payment to services rendered.***

Defendant also failed to mention that it still contends it should receive commissions on not yet created re-designs, anniversary editions, and other iterations of Kim's published works, even though a new agent would have to work for a year to bring each to fruition. In other words, Defendant wants to get paid on these re-designs and additional related works without doing the significant work necessary for those items to get published. This is not just about existing works as Defendant ignored in its letter.

Defendant also still faces significant liability for promoting numerous direct competitors of Kim's at great detriment to Kim and for stealing Kim's unique design and packaging. The breach of fiduciary claim is not just because Defendant began working for others in the genre of spirituality authors, but she signed up direct competitor and then had them mimic Kim's unique designs at great financial cost to Kim. All after telling Kim she would not. This is not like an agent who just generally handles a cookbooks.

Above all, we don't believe this court should entertain a motion at this time because almost no discovery has occurred. Scant documents have been produced and the parties are in a dispute over that. No third party discovery has been sent because there was mediation. And no depositions have been taken. Many of the issues discussed in this letter will come to fruition during discovery. A pre-discovery motion for summary judgment is, therefore, premature.

Sincerely,

DICKINSON WRIGHT PLLC

Jeffrey H. Kass

4890-4975-8351 v1 [105439-1]